J-S36044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CARLOS PEREZ | : | |
| | : | |
| Appellant | : | No. 2237 EDA 2022 |

Appeal from the PCRA Order Entered August 19, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010665-2011

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.:           **FILED OCTOBER 26, 2023**

Appellant, Carlos Perez, appeals from the order entered in the Philadelphia County Court of Common Pleas, which denied his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), upon remand from this Court.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On July 11, 2013, Appellant entered a negotiated guilty plea to third-degree murder, conspiracy, and possessing instruments of crime. In exchange for the plea, the Commonwealth recommended a sentence of 20 to 40 years of incarceration and agreed to *nolle prosse* the remaining charges.

At Appellant's guilty plea hearing, Appellant acknowledged that his plea

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

was based upon the following facts:

> On April 15th, 2011[,] the two defendants Angel Suarez, Jr. and [Appellant] went to the 3000-block of Water Street here in Philadelphia in search for Angel Suarez [Vargas], Sr., the [co-]defendant's father.
>
> \* \* \*
>
> When they arrived on the block, they did find Angel Suarez Vargas and engaged him in a physical altercation. During that altercation both defendants physically fought Angel Suarez Vargas. Another individual on the block by the name of Ian Wolbert saw the fight and jumped into the fight to help Angel Suarez Vargas.
>
> After the fight stopped, the two defendants left the same way they arrived, in a burgundy Honda Accord with a black primer door. About 10 minutes later the two defendants returned in the same burgundy Honda Accord. This time both had firearms. The two defendants saw both Ian Wolbert and Angel Suarez Vargas and chased them, and both fired their guns in the direction of Ian Wolbert and Angel Suarez Vargas. One of those bullets struck a 46-year-old female by the name of Sandra Laboy in her back. Her body was transported to Temple Hospital where she was pronounced dead. Her remains were taken to the medical examiner's office where she was examined by Dr. Sam Gulino. The cause of death was a gunshot wound to her back, and he concluded to a reasonable degree of scientific certainty that the manner of death was homicide.
>
> \* \* \*
>
> Homicide investigators interviewed a number of witnesses in the neighborhood who described four individuals in a fight, described two Hispanic males leaving in a burgundy Honda Accord and describe[d] those same two individuals as coming back and firing guns on the block. Some of those witnesses were able to identify Ian Wolbert and Angel Suarez Vargas by photo spread but were unable to identify the two defendants seated at the bar of the court.
>
> Based on this information[,] on April 17th, 2011[,] members

of the Homicide Unit interviewed Ian Wolbert who provided a statement identifying Angel Suarez Vargas as the person he helped, and also telling Homicide that when the defendants had left the scene initially Angel Suarez Vargas told Ian Wolbert that one of those people was his son.

On May 2nd, 2011[,] Angel Suarez Vargas was interviewed by Homicide, provided a statement detailing what [he had] just said, and identified both defendants as the defendants who were shooting guns on the 3000-block of Water Street. Those two defendants were placed in photo spreads and on May 3rd, 2011[,] both were identified by Ian Wolbert.

On May 11th, 2011[,] affidavits and arrest warrants were generated for both defendants. On May 23rd, 2011[,] Angel Suarez was arrested on the 2000-block of North 7th Street and after being provided his **Miranda**[2] warnings did provide a statement to Homicide admitting to his participation in the offense.

On May 31st, 2011[,] at the intersection of Kensington and Allegheny[,] [Appellant] was arrested during a routine traffic stop. During that stop officers had recognized [Appellant] as wanted for murder. [Appellant] attempted to flee from the car but was apprehended a short distance away.

(N.T. Guilty Plea Hearing, 7/1/13, at 60-63). At the conclusion of the summary, Appellant agreed that it was "a fair account of what happened" and that he was pleading guilty because he was guilty. (**Id.** at 64-65). Following the plea, the trial court sentenced Appellant to an aggregate sentence of 20 to 40 years of imprisonment. Appellant did not file a direct appeal.

On June 30, 2014, Appellant timely filed a pro se PCRA petition, asserting ineffective assistance of counsel and after-discovered evidence.

---

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

- 3 -

Appellant attached to the petition an affidavit from co-defendant Suarez in which he attests that he "had done wrong by putting someone in this position that is innocent," and that a friend known to him as "Pito" participated in the shooting. (*Pro Se* PCRA Petition, 6/30/14, Exhibit 2 at 2 (English Translation of co-defendant Suarez's Affidavit)). Thereafter, the court appointed counsel, who filed an amended PCRA petition on May 30, 2017, reasserting these claims. The PCRA court dismissed the petition without a hearing on May 21, 2018. Appellant timely appealed.

On appeal, a panel of this Court concluded that the PCRA court erred in denying Appellant's after-discovered evidence claim without first conducting an evidentiary hearing. This Court concluded that all of Appellant's other claims were meritless. Therefore, this Court vacated the PCRA court's order in part and remanded for an evidentiary hearing limited to the issue of the after-discovered evidence claim. ***See Commonwealth v. Perez***, 221 A.3d 1250 (Pa.Super. 2019) (unpublished memorandum).

The PCRA court detailed the subsequent procedural history as follows:

> On September 17, 2021, an evidentiary hearing was held with Appellant where Appellant and Co-Defendant [Suarez] testified. Appellant's witness…, Co-Defendant Angel Suarez, Jr., testified that an individual named "Pito", real name Alvin Ortiz Del Ollo, Co-Defendant [Suarez's] brother-in-law, was the actual second shooter instead of Appellant. At the time of Co-Defendant [Suarez] testifying at the evidentiary hearing, Pito was dead, having allegedly been murdered in Puerto Rico two years earlier. (N.T. Hearing, 9/17/21, at 49). On May 12, 2022, Appellant testified at a follow-up evidentiary hearing, stating that he pled guilty because he was scared that everyone was going to continue lying as

- 4 -

they did in their statements and at the preliminary hearing and that he did not know that Co-Defendant [Suarez] was going to come forward and say that Appellant did not commit the shooting in question.

(PCRA Court Opinion, filed 11/10/22, at 3) (citation formatting provided; footnote omitted).

On August 19, 2022, the PCRA court denied relief. Appellant filed a timely notice of appeal on August 29, 2022. The PCRA court subsequently ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), and Appellant filed his concise statement on September 27, 2022.

Appellant presents one issue for our review:

Did the PCRA court err by denying [Appellant's] request for PCRA relief in the form of a new trial by concluding that the after-discovered evidence would not have compelled a different outcome at the stage of the plea negotiations?

(Appellant's Brief at 5).

We review a PCRA court's order denying relief to determine whether the court's findings of fact are supported by the record, and whether its legal conclusions are free from error. *Commonwealth v. Conway*, 14 A.3d 101 108 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). Further, a PCRA court's credibility determinations should be given great

deference; we are bound by the credibility determinations of the PCRA court if those determinations are supported by the record. ***Commonwealth v. Johnson***, 600 Pa. 329, 345, 966 A.2d 523, 532 (2009).

Appellant argues that if he had known that co-defendant Suarez would have testified the other shooter was not Appellant, he would not have pled guilty. Appellant insists that the fact that he would not have pled guilty in light of co-defendant Suarez's new testimony is sufficient to satisfy the requirements of an after-discovered evidence claim. Appellant concludes the PCRA court erred by denying his claim of after-discovered evidence, and this Court must grant relief. We disagree.

A petitioner asserting an after-discovered evidence claim under the PCRA must plead and prove that: "'(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.'" ***Commonwealth v. Cox***, 636 Pa. 603, 614, 146 A.3d 221, 228 (2016) (quoting ***Commonwealth v. D'Amato***, 579 Pa. 490, 519, 856 A.2d 806, 823 (2004)).[3] "At an evidentiary hearing, an appellant must show by a

---

[3] Although Appellant's conviction resulted from a guilty plea, rather than a trial, the analysis of his claim remains the same. Our Supreme Court has held that "any after-discovered evidence which would justify a new trial would also entitle a defendant to withdraw his guilty plea." ***Commonwealth v. Peoples***, 456 Pa. 274, 275, 319 A.2d 679, 681 (1974).

- 6 -

preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." *Commonwealth v. Rivera*, 939 A.2d 355, 359 (Pa.Super. 2007), *appeal denied*, 598 Pa. 774, 958 A.2d 1047 (2008) (internal citations omitted).

In making the determination of whether after-discovered evidence would likely compel a different verdict, "a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa.Super. 2010). Where the alleged after-discovered evidence is recantation testimony, "the PCRA court must, in the first instance, assess the credibility and significance of the recantation in light of the evidence as a whole." *Commonwealth v. Small*, 647 Pa. 423, 450–51, 189 A.3d 961, 977 (2018) (quoting *D'Amato, supra* at 523, 856 A.2d at 825). "Unless the [PCRA] court is satisfied that the recantation is true, it should deny a new trial." *Commonwealth v. Henry*, 550 Pa. 346, 363, 706 A.2d 313, 321 (1997) (citations omitted).

Further,

> an appellate court may not interfere with the [PCRA court's decision regarding] a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion. Additionally, the deference normally due to the findings of the PCRA court is accentuated where what is involved is recantation testimony. As such, it was within the exclusive province of the PCRA court to determine the credibility of [the witness's] recantation. Finding no clear abuse of discretion on the part of the PCRA court in making its credibility determination,

this Court is bound to accept it.

*Commonwealth v. Medina*, 92 A.3d 1210, 1219 (Pa.Super. 2014), *appeal dismissed as improvidently granted*, 636 Pa. 77, 140 A.3d 675 (2016) (citations, internal quotation marks, and original brackets omitted).

Instantly, in denying Appellant's claim of after-discovered evidence, the PCRA court found that co-defendant Suarez's testimony lacked the indicia of reliability. The court explained that the statement and testimony at the PCRA hearing, "by nature of being recantation, were incredibly unreliable and were also riddled with inconsistencies refuted by the available record." (PCRA Court Opinion at 7). The PCRA court noted that both defendants pled guilty after hearing the factual basis for their plea. The court explained that co-defendant Suarez's explanation as to why he originally said that Appellant was involved in the shooting was "incredibly weak." (*Id.* at 11). Specifically:

> Co-Defendant Angel Suarez Jr. alleged in his affidavit that he went along with a story concocted by his father to blame Appellant as a way of helping himself out of the trouble he was in for shooting at his father. However, Co-Defendant Angel Suarez Jr. blaming Appellant for the shooting does not explain why Co-Defendant Angel Suarez Jr. would then still plead guilty. …[T]his shows that Co-Defendant Angel Suarez Jr.'s justifications for lying were incredibly weak and this…new 'truth' had no indicia of reliability.

(*Id.*) Moreover, the court then explained that co-defendant Suarez's statement was contradicted by the available record, stating:

> Both Co-Defendant Angel Suarez Jr.'s father and Ian Wolbert identified Co-Defendant Angel Suarez Jr. and Appellant as the shooters, undercutting the new allegation that "Pito" was the second shooter. Contrary to what Co-

- 8 -

> Defendant Angel Suarez Jr. stated, neighbors who witnessed the shooting only saw two individuals, not three. Those same neighbors also saw the shooters running toward Co-Defendant Angel Suarez Jr.'s father and Ian Wolbert while firing their weapons, not away from the victims as Co-Defendant Angel Suarez Jr. alleged in his affidavit.

(*Id.*)

Upon our review of the record, we see no clear abuse of discretion by the PCRA court in rejecting co-defendant Suarez's statement as incredible. *See Medina, supra*. As the PCRA court noted, the evidence of Appellant's guilt included the testimony of two eyewitnesses who identified Appellant as the shooter soon after the shooting. Assessing this evidence against co-defendant Suarez's incredible conflicting account, the record supports the court's decision to deny relief. *See Small, supra*; *Henry, supra*. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/26/2023